UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ORVEL WINSTON LLOYD,

                Plaintiff,

v.                                Case No. 3:16-cv-906-J-34PDB

SHERIFF BILL LEEPER,
et al.,


                Defendants.

_____

**ORDER**

**I. Status**

      Plaintiff Orvel Winston Lloyd, who was an inmate at the Nassau County Jail,[1] initiated this action on July 14, 2016, by filing a Civil Rights Complaint (Complaint; Doc. 1) pursuant to 42 U.S.C. § 1983. In the Complaint, Lloyd names the following individuals as Defendants: (1) Nassau County Sheriff Bill Leeper; (2) Deputy Joshua Moyers; (3) Deputy C.D. Arline; and (4) Robert Foster, a circuit court judge for the Fourth Judicial Circuit, Nassau County,

_____

[1] According to the Nassau County Inmate Inquiry, Lloyd was released on July 13, 2018. See https://dssinmate.nassauso.com, inmate detail for Orvel Winston Lloyd.

Florida.[2] He asserts that the Defendants violated his Fourth and
Fourteenth Amendment rights and Florida Statutes section 933.04.[3]
According to Lloyd, Defendant Moyers conducted an unlawful traffic
stop, illegally searched and arrested Lloyd, seized property
without probable cause, filed a false traffic report, planted bills
in Lloyd's wallet, and kept Lloyd standing outside his truck for a
prolonged period while awaiting a canine unit on April 22, 2016,
(counts one and two). See Complaint at 5-6. Lloyd alleges that
Defendant Arline failed to investigate the property where the
alleged criminal activities occurred, and filed a defective and
fraudulent search warrant affidavit on April 22, 2016 (count
three). See id. at 6-7. As for Defendant Leeper, Lloyd asserts he
failed to train his Nassau County deputies and falsely imprisoned
Lloyd based on a bogus search warrant (count four). See id. at 7.
Last, with regard to Defendant Foster, Lloyd alleges that he signed
an April 22, 2016 search warrant in bad faith, refused to permit
Lloyd to appear at a bond hearing, set the biggest bond ever for a

---

[2] Lloyd also sued the Nassau County Sheriff's Department and
Deputies Tholl, Sabra, and Walton. See Complaint at 1, 2, 6, 8. The
Court dismissed Lloyd's claims without prejudice as to these
Defendants for his failure to prosecute. See Order (Doc. 44), filed
January 19, 2017; Order to Show Cause (Doc. 40), filed December 12,
2016.

[3] Florida Statutes section 933.04, titled "Affidavits,"
states: "The right of the people in their persons, houses, papers
and effects against unreasonable seizures and searches shall not be
violated and no search warrant shall be issued except upon probable
cause, supported by oath or affirmation particularly describing the
place to be searched and the person and thing to be seized."

third degree felony, and had a long term personal vendetta towards Lloyd. See id. at 8. As relief, Lloyd requests compensatory and punitive damages.[4] See id. at 9.

Before the Court are Defendants Leeper, Arline, and Moyers' Motion to Dismiss Complaint (Def. Motion; Doc. 15), Defendant Foster's Motion to Dismiss Plaintiff's Complaint (Foster's Motion; Doc. 18), and Plaintiff's Motion for Summary Judgment (Lloyd's SJ Motion; Doc. 39). The Court advised Lloyd that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the motions. See Order (Doc. 7). Lloyd filed his responses in opposition to the motions. See Response to Defendant Foster's Motion to Dismiss (Response I; Doc. 21); Plaintiff's Response to Defendants' Motion to Dismiss (Doc. 39). Defendants filed their responses in opposition to Lloyd's SJ Motion. See Defendant Judge Robert Foster's Response and Objection to Plaintiff's Motion for Summary Judgment (Foster's Response; Doc. 41); Defendants' Response to Plaintiff's Motion for Summary Judgment (Def. Response; Doc. 42). Accordingly, this matter is ripe for review.[5]

---

[4] Lloyd asserts that an injunction should be granted against Judge Foster. See Complaint at 8. However, it is unclear what type of injunction he seeks.

[5] On July 19, 2017, the Court granted Lloyd's motion to stay, and stayed the case to permit him an opportunity to seek counsel and determine how he intended to proceed. See Order (Doc. 55). The

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002); <u>see</u> <u>also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. <u>See</u> <u>Randall v. Scott</u>, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. <u>Jackson v. Bellsouth Telecomm.</u>, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions,

---

Clerk reopened the case on October 6, 2017. <u>See</u> Order (Doc. 60).

and a formulaic recitation of the elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (internal quotations omitted); <u>see also</u> <u>Jackson,</u> 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as <u>de</u> <u>facto</u> counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol. Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011)[6] (quoting <u>GJR Invs., Inc. v. Cty. of</u>

---

[6] "Although an unpublished opinion is not binding . . . , it is persuasive authority." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); <u>see</u> <u>generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive

Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall v. Scott, 610 F.3d 701, 706 (11th Cir. 2010)).

### III. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[7] An issue is genuine when the evidence is

---

authority.").

[7] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must

view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## IV. Plaintiff's Complaint[8]

Lloyd asserts that Defendant Moyers illegally stopped him in his truck with two female passengers on April 22, 2016. <u>See</u> Complaint at 2, ¶ 8. Other deputies arrived on the scene to assist with a search and found "some pills and some washed counterfeit bills." <u>Id.</u> at ¶ 10. He states that the deputies also found a cricket trap with some green pills, and Moyers planted a $20.00 bill and a $50.00 bill inside Lloyd's wallet. <u>See</u> <u>id.</u> at 2-3 ¶¶ 11-13. Lloyd maintains that Moyers arrested them, and charged them with possession of pills and washed counterfeit money. <u>See</u> <u>id.</u> at 3, ¶ 14. According to Lloyd, Moyers claimed he stopped them because Lloyd was not wearing a seat belt, the truck windows had illegal tint, and the truck matched the description of one used by

---

[8] The Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. <u>Miljkovic v. Shafritz and Dinkin, P.A.</u>, 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved. Additionally, because this matter is before the Court on motions to dismiss filed by Leeper, Arline, Moyers, and Foster, the Court's recitation of the facts will focus on Lloyd's allegations as to these Defendants.

individuals who had passed counterfeit bills at a local business. See id. Lloyd avers that Deputy Arline failed to investigate and filed a false affidavit to obtain a search warrant for Lloyd's residence. See id. at ¶¶ 15-20. He states that Judge Foster signed the search warrant in bad faith when he knew Arline's affidavit was fraudulent. See id. at 3-4, ¶¶ 21-26. According to Lloyd, Sheriff Leeper caused the illegal search and seizure, illegal arrest, and false imprisonment because he knew a percentage of his deputies were under investigation, and failed to train them to overcome police corruption. See id. at 4-5, ¶¶ 27-30.

## V. Discussion

### A. Lloyd's Request for Judicial Disqualification

Before the Court is Lloyd's request for disqualification, in which he asks that the undersigned disqualify herself in this action so the Clerk can assign his SJ Motion to another United States District Judge who is "not connected with Judge Foster."[9] See Lloyd's SJ Motion at 12. "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980). Indeed, neutrality ensures that "life, liberty, or property

---

[9] In previously-filed motions, Lloyd maintained that the undersigned and Judge Foster are friends and the undersigned "is carrying out a pattern of fraud upon the court." Motion for Disqualification (Doc. 32) at 2; see Supplemental Motion for Disqualification (Doc. 45) at 2. The Court denied Lloyd's motions. See Order (Doc. 49), filed April 21, 2017.

will not be taken on the basis of an erroneous or distorted conception of the facts or the law." Id. "At the same time, it preserves both the appearance and reality of fairness, . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." Id.

Relatedly, 28 U.S.C. § 455(a) instructs a federal judge to disqualify herself if her "impartiality might reasonably be questioned," and § 455(b) requires recusal when any of the specific circumstances set forth in that subsection exist, including when the judge "[i]s a party to the proceeding," or "has a personal bias," or "has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(a), (b)(1), (b)(4), (b)(5)(i). Indeed, under § 455, "a judge is under an affirmative, self-enforcing obligation to recuse himself sua sponte whenever the proper grounds exist." United States v. Kelly, 888 F.2d 732, 744 (11th Cir. 1989). Thus, the purpose of § 455 is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.

Preliminarily, Lloyd failed to comply with Rule 3.01(a) in that he failed to file a separate motion with a memorandum of legal

authority. <u>See</u> Rule 3.01(a), Local Rules of the United States District Court, Middle District of Florida.[10] Instead, he embeds his request for disqualification in his summary judgment motion. <u>See</u> Lloyd's SJ Motion at 12. Nevertheless, the Court turns to the merits of Lloyd's request. It appears that the basis for the request is Lloyd's disagreement with the undersigned's rulings in a prior case, <u>Orvel Winston Lloyd v. Gary Baker</u>, 3:13-cv-903-J-34PDB, as well as his belief that the Court must be biased against him. The undersigned has fully reviewed and considered Lloyd's request and finds that there is no reason for the undersigned to recuse herself in this case. <u>See</u> <u>McWhorter v. City of Birmingham</u>, 906 F.2d 674, 678-79 (11th Cir. 1990); <u>Ivey v. Snow</u>, Civil Action No. 1:05-CV-1150-JOF, 2007 WL 1810213, at *2 (N.D. Ga. June 21, 2007).

Lloyd has identified no legitimate basis for his unsupported claim of bias, and any displeasure with the Court's rulings provides no basis for recusal. As such, the undersigned is obligated to continue to preside over this matter. <u>See</u> <u>United States v. Greenough</u>, 782 F.2d 1556, 1558 (11th Cir. 1986) (stating

---

[10] Local Rule 3.01(a) provides:

> In a motion or other application for an order, the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request, all of which the movant shall include in a single document . . . .

"a judge, having been assigned to a case, should not recuse [her]self on unsupported, irrational, or highly tenuous speculation"); <u>Lawal v. Winners Int'l Rests. Co. Operations, Inc.</u>, No. 1:04-CV-0913-WSD, 2006 WL 898180, at *4 (N.D. Ga. Apr. 6, 2006) ("'A trial judge has as much obligation not to recuse [her]self when there is no reason to do so as [s]he does to recuse [her]self when the converse is true.'"); <u>United States v. Malmsberry</u>, 222 F. Supp. 2d 1345, 1349 (M.D. Fla. 2002) (stating "a judge has as strong a duty to sit when there is no legitimate reason to recuse as [s]he does to recuse when the law and facts require"). Lloyd has neither shown that the undersigned's impartiality "might reasonably be questioned" nor that any of the circumstances set forth in 28 U.S.C. § 455(b) exist. Therefore, given that there are no proper grounds upon which to base a disqualification, Lloyd's request for disqualification is due to be denied, and the undersigned will consider and rule on Lloyd's SJ Motion.

## B. Judicial Immunity

Lloyd asserts that Judge Foster signed an April 22, 2016 search warrant in bad faith when he knew Arline's probable cause affidavit was fraudulent, <u>see</u> Complaint at 3-4, ¶¶ 21-26, refused to permit Lloyd to appear at a bond hearing, set "the biggest bond ever" for a third degree felony, and had a long term "personal vendetta" towards Lloyd, <u>id.</u> at 8, ¶¶ 55-57. Defendant Foster maintains that he "is absolutely immune from suit" under the

doctrine of judicial immunity. <u>See</u> Foster's Motion at 5. Lloyd challenges Foster's assertion of immunity, arguing that Foster acted outside his judicial capacity and in clear absence of jurisdiction, and as such is not immune. <u>See</u> Response I at 2-3.

The well-established principle of judicial immunity from civil liability bars these claims. <u>Harris v. Deveaux</u>, 780 F.2d 911, 914 (11th Cir. 1986); <u>see also</u> <u>Stump v. Sparkman</u>, 435 U.S. 349, 355-56 (1978); <u>Wahl v. McIver</u>, 773 F.2d 1169, 1172 (11th Cir. 1985). The application of the doctrine of absolute immunity is strictly a question of law for the Court to determine. <u>See</u> <u>Brown v. Crawford Cty.</u>, Ga., 960 F.2d 1002, 1012 (11th Cir. 1992). "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." <u>Pierson v. Ray</u>, 386 U.S. 547, 553-54 (1967); <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 199 (1985). "As early as 1872, the Court recognized that it . . . [is] 'a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself.'" <u>Stump</u>, 435 U.S. at 355 (second alteration in original) (quoting <u>Bradley v. Fisher</u>, 80 U.S. 335, 347 (1871)). For these reasons, the Supreme Court has determined that judges cannot be held liable for their judicial acts even if those acts are corrupt, done with malice or in excess

of the judges' jurisdiction. See Stump, 435 U.S. at 356; see also Wahl, 773 F.2d at 1172. "'Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction.'" William B. Cashion Nevada Spendthrift Trust v. Vance, 552 F. App'x 884, 885-85 (11th Cir. 2014) (quoting Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000)).[11]

In Stump, the Supreme Court recognized a two-part test to be used in determining whether a judge is absolutely immune from potential civil liability. See Stump, 435 U.S. at 356-62. The

---

[11] The Eleventh Circuit Court of Appeals has recognized that strong public policy arguments support upholding the doctrine of absolute judicial immunity.

> First and foremost, a judge must be free to act upon his own convictions, without apprehension of personal consequences; second, the controversiality and importance of the competing interests in a case before a court make it likely that the losing party may be overly willing to ascribe malevolent motives to the judge; third, judges faced with the prospect of defending damages actions and, perhaps, satisfying money judgments would be driven to wasteful and destructive self-protection devices and, moreover, may be less inclined to administer justice; fourth, alternative remedies such as appeal and impeachment reduce the need for private rights of action against judges; and fifth, the ease of alleging bad faith would make a qualified "good faith" immunity virtually worthless because judges would constantly be forced to defend their motivations in court.

Dykes v. Hosemann, 776 F.2d 942, 949 (11th Cir. 1985).

reviewing court must ask whether the judge was acting in a judicial capacity, and whether the judge acted in the "clear absence of all jurisdiction." Id. at 356-57, 360. Only in circumstances where a judge acted in the "clear absence of all jurisdiction" or acted in a non-judicial capacity can the judge face civil liability for actions taken. See id. at 356-62.

In determining whether the judge was acting within his or her judicial capacity, the Eleventh Circuit instructs a court to consider several factors, including: whether "(1) the precise act complained of . . . is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity." Harper v. Merckle, 638 F.2d 848, 858 (5th Cir. Unit B Mar. 1981) (quoting McAlester v. Brown, 469 F.2d 1280, 1282 (5th Cir. 1972));[12] see also William B. Cashion Nevada Spendthrift Trust, 552 F. App'x at 886. Notably, "[a] judge is entitled to immunity 'even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." William B. Cashion Nevada Spendthrift Trust, 552 F. App'x at 886 (quoting Bolin, 225 F.3d at 1239). Utilizing this framework, the Court will

---

[12] This case and all Fifth Circuit cases decided prior to September 30, 1981, are binding precedent pursuant to Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

now consider whether Judge Foster is entitled to immunity from the claims Lloyd asserts.

Liberally construing Lloyd's allegations, it is evident that he is complaining of actions taken by Judge Foster in his judicial capacity. Notably, the precise acts of which Lloyd complains (signing a search warrant, conducting a bond hearing, setting a bond, summoning Lloyd to Foster's courtroom, and entering orders in Lloyd's state court criminal cases) are normal judicial functions.[13] According to Lloyd, Judge Foster carried out a "personal vendetta against [him] over the years."[14] Complaint at 8, ¶ 55. The vendetta along with other accusatory acts are alleged to have occurred as part of ongoing judicial proceedings in the Fourth Judicial Circuit Court of Florida. Lloyd fails to provide any basis for a conclusion that Judge Foster's actions occurred outside of his judicial

---

[13] Lloyd attempts to sue Judge Foster in his individual capacity, stating that Judge Foster was acting outside his judicial capacity. See Complaint at 1. However, the factual allegations of the Complaint demonstrate that the grievances Lloyd complains of arose out of the actions Judge Foster took while presiding over Lloyd's criminal cases. These types of actions are exactly what the Supreme Court held must be immunized from civil liability. See Stump, 435 U.S. at 355.

[14] The Court takes judicial notice of Lloyd's prior civil rights actions, in which he raised similar claims involving Judge Foster. See Case Nos. 3:07-cv-547-J-25TEM, Order (Doc. 32) at 8-10; Lloyd v. Foster, 298 F. App'x 836, 840 (11th Cir. 2008) (per curiam) ("Because Judge Foster was acting in his judicial capacity and not in clear absence of jurisdiction, the district court correctly concluded that judicial immunity prohibits Lloyd's claims against him."); Case No. 3:13-cv-903-J-34PDB, Order (Doc. 27); Report and Recommendation (Doc. 17) at 9-10.

capacity. Indeed, the acts of which Lloyd complains arose while Judge Foster was acting within his official capacity as a state circuit court judge.[15] In consideration of the foregoing, the undersigned concludes that the actions about which Lloyd complains constitute judicial acts taken by Judge Foster while acting in a judicial capacity.

The Court also considers the second inquiry identified by the Supreme Court in Stump. This question, which focuses on whether the judge acted in clear absence of all jurisdiction, has been interpreted to preclude immunity in those circumstances "in which a judge acts purely in a private and non-judicial capacity," Henzel v. Gerstein, 608 F.2d 654, 658 (5th Cir. 1979), in a matter "clearly outside the judge's subject matter jurisdiction." Dykes v. Hosemann, 776 F.2d 942, 948 (11th Cir. 1985). Even using a liberal construction of the Complaint, it cannot be said that Lloyd has alleged any facts supporting a plausible claim that Judge Foster acted in a private manner or outside his public judicial position. Indeed, nowhere in his Complaint does Lloyd allege that Judge Foster acted in such a manner. Moreover, as a circuit judge in the Fourth Judicial Circuit of Florida, Judge Foster had jurisdiction

---

[15] To the extent Lloyd asserts Foster carried out a personal vendetta when he told Gary Baker (Lloyd's attorney) that he would not hear any motions filed by Baker on behalf of Lloyd, see Complaint at 8, ¶ 56, the Court takes judicial notice of Lloyd's prior civil rights case, in which the Court resolved similar claims. See Case No. 3:13-cv-903-J-34PDB, Orders (Docs. 40, 27); Report and Recommendation (Doc. 17).

over Lloyd's criminal cases, and had not only the authority, but also the obligation, to adjudicate the cases. Consequently, the undersigned concludes that Judge Foster was acting within his judicial capacity and had the authority to adjudicate Lloyd's cases. Thus, Judge Foster enjoys absolute judicial immunity from civil liability as to Lloyd's claims against him.[16] Therefore, Foster's Motion to Dismiss is due to be granted because Lloyd's Complaint seeks relief from Judge Foster who is absolutely immune from suit.

## C. <u>Heck v. Humphrey</u>

Defendants maintain that the Court lacks subject matter jurisdiction because Lloyd's claims are barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). <u>See</u> Def. Motion at 2-3; Foster's Motion at 10-12. Lloyd disagrees, arguing that <u>Heck</u> does not bar his Fourth Amendment claims. <u>See</u> Response I at 3-4. The Eleventh Circuit has held that where a prisoner's illegal search and seizure claims might not imply that his underlying conviction was invalid, the

---

[16] Section 1983 provides that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. To the extent Lloyd requests injunctive relief against Foster, <u>see</u> Complaint at 8, ¶ 57, he has not alleged facts supporting a plausible claim that Foster violated any declaratory decree or that declaratory relief was unavailable. Moreover, Lloyd has not alleged facts suggesting "that there is a serious risk of continuing irreparable injury if the relief is not granted . . ." <u>Bolin</u>, 225 F.3d at 1242 (citation omitted). Lloyd has failed to allege sufficient facts indicating that there is a real and immediate threat of future injury from Judge Foster.

claims would not be barred by <u>Heck</u>. <u>See</u> <u>Harvey v. United States</u>,
681 F. App'x 850 (11th Cir. 2017) (per curiam). The Court
explained:

> Under <u>Heck</u>, a § 1983 plaintiff seeking to
> recover damages for an "allegedly
> unconstitutional conviction or imprisonment"
> or "for other harm caused by actions whose
> unlawfulness would render a conviction or
> sentence invalid" must first prove that his
> conviction or sentence has been invalidated.
> 512 U.S. at 486-87, 114 S.Ct. at 2372. Thus, a
> § 1983 damages suit is due to be dismissed if
> "a judgment in favor of the plaintiff would
> necessarily imply the invalidity of his
> conviction or sentence," unless the
> plaintiff's conviction or sentence has been
> invalidated. <u>Heck</u>, 512 U.S. at 487, 114 S.Ct.
> at 2372. But at the same time, if the
> plaintiff's action would "not demonstrate the
> invalidity of any outstanding criminal
> judgment," then it should not be dismissed.
> <u>Id.</u> (emphasis omitted). "[A]s long as it is
> possible that a § 1983 suit would not negate
> the underlying conviction, then the suit is
> not <u>Heck</u>-barred." <u>Dyer v. Lee</u>, 488 F.3d 876,
> 879-80 (11th Cir. 2007).
>
> In a footnote in <u>Heck</u>, the Supreme Court
> addressed a suit for damages arising out of an
> allegedly unreasonable search and noted that
> this type of suit may proceed even if evidence
> from the challenged search was introduced in
> the criminal trial that resulted in the
> plaintiff's conviction. 512 U.S. at 487 n.7,
> 114 S.Ct. at 2372 n.7. The Court reasoned
> that, "[b]ecause of doctrines like independent
> source and inevitable discovery, and
> especially harmless error, such a § 1983
> action, even if successful, would not
> necessarily imply that the plaintiff's
> conviction was unlawful." <u>Id.</u> (citations
> omitted). In another footnote, the <u>Heck</u> Court
> recognized that an abuse of process claim
> under § 1983 also does not necessarily imply
> that the plaintiff's conviction is invalid.

> Id. at 486 n.5, 114 S.Ct. at 2372 n.5. The
> Court said the "gravamen of [abuse of process]
> is not the wrongfulness of the prosecution,
> but some extortionate perversion of lawfully
> initiated process to illegitimate ends." Id.
>
> In keeping with this language from Heck, this
> court has recognized that Heck does not
> necessarily bar § 1983 damages actions for
> Fourth Amendment violations because illegal
> searches may be followed by valid convictions.
> In other words, a successful § 1983 action for
> search and seizure violations does not
> necessarily imply that a conviction is
> invalid. Hughes, 350 F.3d at 1160. And we have
> recognized that in a § 1983 action, the Fourth
> Amendment can serve as the basis for malicious
> prosecution claims, which are very similar to
> abuse of process claims. Uboh v. Reno, 141
> F.3d 1000, 1003 & n.4 (11th Cir. 1998). To
> determine whether a Fourth Amendment claim
> necessarily implies that the plaintiff's
> conviction was unlawful, the court must "look
> both to the claims raised under § 1983 and to
> the specific offenses for which the § 1983
> claimant was convicted." Hughes, 350 F.3d at
> 1160 n.2. When the circumstances surrounding a
> conviction cannot be discerned from the
> record, it is impossible for a court to
> determine whether a successful § 1983 damages
> action for unreasonable search and seizure
> would necessarily imply that the conviction is
> invalid. Id. at 1161. Thus, any determination
> that such a § 1983 damages action is barred by
> Heck is error. Id.

Id. at 853-54.

At this stage of the litigation, the Court cannot determine on this record whether Lloyd's Fourth Amendment claims would necessarily imply that his conviction is invalid, and therefore Heck-barred. See Hughes, 350 F.3d at 1167. Thus, Defendants'

motions to dismiss based on <u>Heck</u> are due to be denied without prejudice.

## D. <u>Younger</u>[17] Abstention

Defendant Foster maintains that the Court should abstain from interfering with the State of Florida's criminal prosecution of Lloyd. <u>See</u> Foster's Motion at 12-13. To the extent Lloyd requests that this Court intervene in pending state court criminal cases,[18] such a request is barred by the abstention doctrine and the principles of exhaustion and comity. Absent some exceptional circumstances meriting equitable relief, a federal court should refrain from interfering with a pending state criminal proceeding. <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37, 43-44 (1971); <u>Butler v. Ala.</u> <u>Judicial Inquiry Comm'n</u>, 245 F.3d 1257, 1261 (11th Cir. 2001) ("<u>Younger</u> and its progeny reflect the longstanding national public policy, based on principles of comity and federalism, of allowing state courts to try cases--already pending in state court--free from federal court interference.") (citation omitted). "In <u>Younger</u>, the Supreme Court set out three exceptions to the abstention doctrine: (1) there is evidence of state proceedings motivated by bad faith, (2) irreparable injury would occur, or (3) there is no adequate alternative state forum where the constitutional issues

_____

[17] <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

[18] <u>See</u> https://www.civitekflorida.com, Case Nos. 2016-CF-340 and 2016-CF-345.

can be raised." <u>Hughes v. Attorney Gen. of Fla.</u>, 377 F.3d 1258, 1263 n.6 (11th Cir. 2004) (citing <u>Younger</u>, 401 U.S. at 45). Lloyd has not shown that any of these three exceptions to the abstention doctrine apply in his case. Therefore, Foster's request is due to be granted.

## E. Lloyd's Motion for Summary Judgment

Lloyd requests that the Court enter summary judgment in his favor, <u>see</u> Lloyd's SJ Motion, and Defendants oppose his request, <u>see</u> Foster's Response (Doc. 41); Def. Response (Doc. 42). Defendants assert that Lloyd's request for summary judgment should be denied because there are genuine issues of material fact at this stage of the litigation. <u>See</u> Def. Response at 2-3. They also maintain that Lloyd's request does not comply with the requirements of Rule 56 and is premature since their motions to dismiss are pending and they have not engaged in discovery. <u>See</u> <u>id.</u> at 2-4; Foster's Response at 3-9. They request that the Court deny Lloyd's SJ Motion, and provide deadlines to permit them to conduct discovery. <u>See</u> Def. Response at 4; Foster's Response at 9. Upon due consideration, the Court determines that Lloyd's SJ Motion should be denied as premature so the parties may develop the facts through discovery. <u>See</u> <u>Snook v. Trust Co. of Ga. Bank of Savannah, N.A.</u>, 859 F.2d 865, 870 (11th Cir. 1988) (stating "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery") (citations omitted). Thus,

the Court will deny Lloyd's SJ Motion without prejudice to his right to refile a summary judgment motion after the Court sets deadlines for discovery and the filing of dispositive motions.

### F. Lloyd's Request for Attorney's Fees

Lloyd requests attorney's fees in the event he prevails. <u>See</u> Complaint at 9. Foster maintains that Lloyd is not entitled to attorney's fees. <u>See</u> Foster's Motion at 13. This Court agrees. <u>See</u> <u>Kay v. Ehrler</u>, 499 U.S. 432, 436 (1991) (stating a pro se litigant is not entitled to attorney's fees under 42 U.S.C. § 1988); <u>Celeste v. Sullivan</u>, 988 F.2d 1069, 1070 (11th Cir. 1992) (per curiam); <u>Cofield v. City of Atlanta</u>, 648 F.2d 986, 987–88 (5th Cir. 1981) (finding attorney's fees unavailable to pro se litigants under § 1988). As such, Foster's Motion as to Lloyd's request for attorney's fees is due to be granted.

In consideration of the foregoing, it is now

**ORDERED**:

1. Lloyd's request for disqualification is **DENIED**.

2. Defendants Leeper, Arline, and Moyers' Motion to Dismiss Complaint (Doc. 15) is **DENIED without prejudice**.

3. Defendant Foster's Motion to Dismiss (Doc. 18) with respect to his judicial immunity, abstention, and attorney's fees arguments is **GRANTED**. All remaining portions are **DENIED**.

4.    Lloyd's claims against Defendant Robert Foster are **DISMISSED** from this action, and the Clerk shall enter judgment accordingly.

5.    Plaintiff's Motion for Summary Judgment (Doc. 39) is **DENIED without prejudice** to his right to refile a summary judgment motion, if he elects to file one, after the Court sets deadlines for discovery and the filing of dispositive motions.

6.    Defendants Leeper, Arline, and Moyers must respond to the Complaint **no later than October 3, 2018.** Thereafter, the Court will set deadlines for discovery and the filing of dispositive motions.

7.    Plaintiff's Answer to Defendant Robert Foster's Response and Objection to Plaintiff's Motion for Summary Judgment (Doc. 43) is **STRICKEN.** <u>See</u> Rule 3.01(c), Local Rules of the United States District Court for the Middle District of Florida.[19]

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of August, 2018.

MARCIA MORALES HOWARD
United States District Judge

---

[19] Local Rule 3.01(c) provides:

> No party shall file any reply or further memorandum directed to the motion or response allowed in (a) and (b) unless the Court grants leave.

sc 8/23
c:
Orvel Winston Lloyd
Counsel of Record