UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ORVEL WINSTON LLOYD,

       Plaintiff,

v.                               Case No. 3:16-cv-906-J-34PDB

BILL LEEPER, SHERIFF, et al.,

       Defendants.

_____

## ORDER

### I.    Status

Plaintiff Orvel Lloyd, a former inmate of the Florida penal system, initiated this action on October 7, 2016, by filing a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Complaint; Doc. 1). In the Complaint, Lloyd asserts that Defendants violated his Fourth and Fourteenth Amendment rights. Lloyd alleges that Defendant Joshua Moyers illegally stopped his vehicle, illegally searched and arrested him, seized property without probable cause, and made false statements in a traffic report. According to Lloyd, Defendant C.D. Arline made false statements in his affidavit in support of a search warrant, illegally searched his home, and arrested him without probable cause. Lloyd maintains that Defendant Bill Leeper knew of Moyers and Arline's corrupt behavior, supported it, and failed to train his deputies to not be corrupt and to comply with the Fourth Amendment and falsely imprisoned Lloyd based upon the bogus search warrant. Lloyd requests declaratory and injunctive relief and an award of compensatory and punitive damages. Of the initial Defendants listed in the Complaint, only Defendants Leeper, Moyers, and Arline remain in this suit. See Docs. 44; 65.

Before the Court is Leeper, Moyers, and Arline's Motion for Summary Judgment (Motion; Doc. 79). Defendants submitted the following exhibits (Defs. Exs.): (A) Moyers's affidavit; (B) Lloyd's deposition; (C) the Information in state criminal case 2016-CF-340; (D) the arrest and booking report for Maranda Sterling; (E) the arrest and booking report for Sky King; (F) the arrest and booking report for Alan Verde; (G) Arline's affidavit; (H) the Information in state criminal case 2016-CF-345; (I) composite exhibit of court documents from cases 2016-CF-340 and 2016-CF-345; (J) a copy of the motion to suppress filed in state criminal case 2016-CF-342; (K) a copy of the order denying the motion to suppress in case 2016-CF-342; (L) a copy of no contest plea agreement in case 2016-CF-340; (M) a copy of the no contest plea agreement in case 2016-CF-345; and (N) a printout of Lloyd's prisoner profile on the Florida Department of Corrections website. Lloyd filed a response to the Motion, with a memorandum of law in support. <u>See</u> Motion to Response to Defendant Motion for Summary [sic] (Response; Doc. 89). Lloyd submitted the following exhibits along with his Response (Pls. Exs): (1) Lloyd's affidavit; (2) a picture of a Toyota Tacoma; (3) Marty Johnson's affidavit; (4) an affidavit for search warrant; and (5) a copy of a Nassau County Sheriff's Office's call for service detail report.[1]

## II.    Lloyd's Allegations

In his Complaint, Lloyd alleges that on April 22, 2016, Moyers illegally stopped Lloyd's pick-up truck, in which Lloyd, another male and two female passengers were riding. Complaint at 2, 5-6. According to Lloyd, Moyers made false statements in his report that Lloyd was not wearing a seatbelt, that the truck's windows were illegally tinted, and

---

[1] Lloyd's exhibit numbers were not sequential; therefore, the Court will refer to the exhibits by the numbers listed above.

that Lloyd's vehicle matched a victim's description of a truck that individuals who had passed counterfeit bills had used to leave the scene. Id. at 3, 5. Lloyd asserts that Moyers never issued him a traffic citation, which demonstrates the illegality of the stop. Id. at 2. Once stopped, Lloyd alleges that Moyers made him wait outside his vehicle for an hour until the canine unit arrived. Id. at 2, 5-6. Upon arrival, the canine unit and other deputies searched the exterior of Lloyd's truck without finding any contraband. Id. Deputies then searched inside the bed of the truck, including property belonging to the two female passengers in the bed of the truck, and found pills and counterfeit bills, which Lloyd alleges belonged to the male passenger, Al Commings, who was never charged. Id. Prior to obtaining a search warrant and without conducting a pat down, Lloyd contends that Moyers took Lloyd's wallet from his pocket and placed it on the hood of his car. Id. Lloyd maintains that Moyers and other deputies had earlier obtained counterfeit bills from a business and Moyers planted those counterfeit bills in Lloyd's wallet. Id. at 5.

Regarding Arline, Lloyd contends that on the same date, Arline submitted a false affidavit in support of a search warrant. Id. at 3-4, 6-7. According to Lloyd, Arline falsely wrote in the affidavit that Lloyd had a prison sentence from a previous conviction for counterfeiting money, was actively producing counterfeit bills, and was the subject of an on-going investigation. Id. Arline also allegedly fabricated evidence and witness statements to obtain the warrant because Arline used "stale" hearsay statements from the two female passengers. Id. Lloyd maintains that the affidavit also did not describe with any specificity the property to be seized. Id. Additionally, Lloyd avers that Arline failed to investigate who was living at the house searched and failed to investigate the criminal activity occurring at the house. Id. Based on these allegations concerning the affidavit

submitted in support of the warrant, Lloyd asserts that there was no probable cause to search his house or arrest him. Id.

As to Leeper, Lloyd alleges that Leeper knew about Moyers and Arline's corrupt behavior generally but failed to terminate their employment and, in fact, insisted that his deputies act corruptly. Id. at 4-5, 7. Lloyd also asserts that Leeper violated clearly established policy and procedures when he kept Lloyd in jail despite the lack of probable cause. Id. Last, Lloyd contends that Leeper failed to train his deputies not to be corrupt and to comply with the dictates of the Fourth Amendment. Id.

### III.    Summary Judgment Standard

Rule 56 instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[2]  An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  Mize v. Jefferson City Bd. of Educ., 93 F.3d

---

[2] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 advisory committee's note 2010 Amends. The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.
Id.  "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive."  Campbell v. Shinseki, 546 Fed. Appx. 874, 879 n.3 (11th Cir. 2013).  Thus, case law construing the former Rule 56 standard of review remains viable and applies here.

739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When the non-moving party bears the burden of proof on an issue at trial, the moving party need not 'support its motion with affidavits or other similar material negating the opponent's claim,' Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986), in order to discharge this initial responsibility." Gonzalez v. Lee Cty. Hous. Auth., 161 F.3d 1290, 1294 (11th Cir. 1998). Instead, the moving party simply may demonstrate "that there is an absence of evidence to support the nonmoving party's case." Id.

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate,

a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

Of course, "pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Although courts show leniency to pro se litigants, courts "will not serve as de facto counsel or 'rewrite an otherwise deficient pleading in order to sustain an action.'" Nalls v. Coleman Low Fed. Inst., 307 Fed. Appx. 296, 298 (11th Cir. 2009) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998)).

### IV.     42 U.S.C. § 1983 and the Fourth Amendment

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under the color of state law." See Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). Lloyd alleges that the Defendants are liable under § 1983 because they violated the Fourth and Fourteenth Amendments. Complaint at 2, 6, 7. At the outset, the court finds that although the Complaint "contains scattered references to the Fourteenth Amendment," Lloyd has not "laid out the elements and stated a claim under that amendment." Signature Pharmacy, Inc. v. P. David Soares, No. 6:08-cv-1853-Orl-31GJK, 2012 WL 1631681, at *2 (M.D. Fla.

May 8, 2012). As one jurist of this Court has observed, "[t]he Fourth Amendment was made applicable to states by the Fourteenth Amendment, <u>Mapp v. Ohio</u>, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081 (1961), and perhaps this explains the references to both of these Amendments in the Plaintiff['s] pleading." But like the Plaintiff in the <u>Signature Pharmacy</u> case, Lloyd has not asserted "an independent Fourteenth Amendment claim." <u>Id.</u> Moreover, also like the Plaintiff in <u>Signature Pharmacy</u>, "it does not appear that [Lloyd] could have proceeded under the Fourteenth Amendment even if [ ]he[ ] had wished to do so." <u>Id.</u> As the <u>Signature Pharmacy</u> court explained:

> Clearly, the gravamen of the Amended Complaint was the allegedly improper . . . seizures for which the Defendants were responsible. The right to be free from unreasonable searches and seizures is protected by the Fourth Amendment, rather than the Fourteenth, and where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process found in the Fourteenth Amendment, must be the guide for analyzing the claim. <u>Albright v. Oliver</u>, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed.2d 114 (1994). Thus, as to the allegations made in the Amended Complaint, a Fourteenth Amendment claim would have been improper.

<u>Id.</u> The case before the Court here is no different. Accordingly, to the extent that Lloyd bases his claims on an independent Fourteenth Amendment claim, the Motion is due to be granted.

However, a search or "[a]n arrest without a warrant and lacking probable cause violates the [Fourth Amendment] and can underpin a § 1983 claim . . . ." <u>Brown v. City of Huntsville, Ala.</u>, 608 F.3d 724, 734 (11th Cir. 2010); <u>see also</u> <u>Jones v. Brown</u>, 649 Fed. Appx. 889, 890 (11th Cir. 2016).

The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated, and no Warrants shall issue,
but upon probable cause, supported by Oath or affirmation,
and particularly describing the place to be searched, and the
persons or things to be seized.

U.S. Const. amend. IV. A traffic stop constitutes a seizure for Fourth Amendment purposes. Brendlin v. California, 551 U.S. 249, 255 (2007). However, the inquiry is not simply whether a suspect has been seized, but whether the seizure was unreasonable. Beshers v. Harrison, 495 F.3d 1260, 1266 (11th Cir. 2007). A traffic stop is reasonable if it is based upon probable cause or supported by reasonable suspicion in accordance with Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008). The Court notes that "an officer's motive in making the traffic stop does not invalidate what is otherwise 'objectively justifiable behavior under the Fourth Amendment.'" United States v. Simmons, 172 F.3d 775, 778 (11th Cir.1999) (quoting Whren v. United States, 517 U.S. 806, 812 (1996)); see also Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (quoting Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1119 n.4 (11th Cir. 1992)) ("Quite simply, '[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.'").

Probable cause exists if an arrest is objectively reasonable in view of the totality of the circumstances. Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003) (quoting Lee, 284 F.3d at 1195). The Eleventh Circuit has explained that "[p]robable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). Notably, an arrest made with probable cause "constitutes an absolute bar to a section 1983 action for false arrest." Id.

Reasonable suspicion exists "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Navarette v. California, 572 U.S. 393, 396 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). "Criminal activity includes even minor traffic violations." United States v. Campbell, 912 F.3d 1340, 1349 (11th Cir. 2019) (citing United States v. Chanthasouxat, 342 F.3d 1271, 1277 (11th Cir. 2003)). Determining whether reasonable suspicion existed in a given case depends on the totality of the circumstances. Id. at 397. More than a mere "hunch" is required to create reasonable suspicion, but "the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." Id. (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)).

## V.     Analysis and Conclusions

### A.     Defendant Moyers

In the Motion, Moyers contends that he had at least reasonable suspicion to initiate the traffic stop, had probable cause to arrest Lloyd, had probable cause to seize the pills and counterfeit bills in Lloyd's possession, did not file a false traffic report, did not plant evidence, and did not unreasonably detain Lloyd while waiting for the canine unit to arrive. Motion at 1-2. In his Response, Lloyd asserts that his truck did not have tinted windows and that Moyers had no proof to establish that his truck met the description of a vehicle used by individuals who gave counterfeit bills to a business. Response at 2-3. It appears as though Lloyd also asserts that the charges against him were dismissed or were invalidated. Id. at 3-4. Lloyd raised the same arguments in his memorandum of law, and

also maintained that he was excessively detained for more than one hour awaiting the canine unit's arrival. Id. at 2.

Seizure

Moyers argues that Lloyd does not deny that he was not wearing a seatbelt for at least a portion of the time he was driving, that there were passengers in the bed of a truck without a tailgate, and that the truck he was driving matched a local business owner's description of a truck two individuals who had passed counterfeit bills used to leave the scene. Motion at 10-11. According to Moyers, the fact that the vehicle matched the description established reasonable suspicion to conduct the traffic stop. Id. at 11. Additionally, Moyers asserts that Lloyd has been unable to state precisely how long he waited outside of his truck, pointing to differing answers Lloyd gave to the question during his deposition. Motion at 14. Moreover, Moyers believes that Lloyd is "confusing the amount of time that elapsed between the initiation of the traffic stop and canine unit arriving with the amount of time that elapsed between the alert by the canine and all passengers being arrested." Id. at 15.[3]

---

[3] Moyers notes that the male passenger who was also arrested that night moved to suppress evidence discovered in the truck based on this same issue. Id. However, the state court denied the motion, finding probable cause existed for Moyers to stop and detain Lloyd for both a traffic violation and investigative purposes and that the canine search did not extend the time it took Moyers to complete the tasks that initially justified the stop and detention. Id. Notably, pursuant to Rule 201(b), Federal Rules of Evidence, courts may take judicial notice of documents from a prior proceeding because they are matters of public record and "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." Horne v. Potter, 392 Fed. Appx. 800, 802 (11th Cir. 2010). However, a "court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (quoting Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992)). As such, "a court may take judicial notice of another court's order only for the limited purpose of recognizing the 'judicial act'

Regarding the tint on the window, the Court finds there is a genuine issue of material fact. Lloyd states that his truck did not have an illegal tint and also presents the affidavit of Marty Johnson stating that the windows of the truck were not tinted. Pls. Ex. 3. Moyers, on the other hand, states in his affidavit that the truck did have an illegal tint.[4] The Court cannot resolve this factual dispute at summary judgment.

Likewise, there is a dispute of fact regarding whether Lloyd had his seatbelt on that night. The Court observes that Lloyd's deposition testimony is less than clear, as he equivocates about whether he had his seatbelt on throughout the entire time that Moyers observed him. Lloyd testified that he was parked at a gas station where he also saw Moyers's cruiser and when Lloyd pulled out, he put his seatbelt on because he noticed Moyers's cruiser following him. Defs. Ex. B at 17-18. However, Lloyd also testified that he had taken off his seatbelt and then put it back on when he saw Moyers's cruiser coming up behind him because Lloyd "wanted to make sure I had the seat belt on." Id. at 18. If Lloyd only had his seatbelt off while he was parked, he would not have committed a traffic violation. See § 316.614(3)(c) ("'Restrained by a safety belt' means being restricted by an appropriately adjusted safety belt which is properly fastened at all times when a motor

_____

that the order represents or the subject matter of the litigation." Jones, 29 F.3d at 1553. Therefore, the Court will take judicial notice of the documents filed in the related state court proceeding, but not for the truth of the determinations made in that proceeding. See id.; see also Kruse, Inc. v. Aqua Sun Invs., Inc., No. 6:07–cv–1367–Orl–19UAM, 2008 WL 276030, at *3 n.2 (M.D. Fla. Jan. 31, 2008) ("Pursuant to Federal Rule of Evidence 201, the Court is taking judicial notice of the state case and its docket entries, ...but not of the facts contained in those documents."). Thus, the state court's resolution of the motion to suppress will not be considered.

[4] While Lloyd attached a picture of his truck, the Court is unable to determine whether the side windows had a tint that would be considered illegal pursuant to section 316.2953, Florida Statutes.

vehicle is in motion.") (emphasis added). Viewing Lloyd's testimony in the light most favorable to him, as the Court must, there is a dispute of fact as to whether Lloyd had a seatbelt on while his truck was in motion that precludes summary judgment on this issue.

Nevertheless, the undisputed facts establish that Moyers did have a legal basis to conduct a traffic stop given the presence of passengers in the bed of the truck where the truck had no tailgate. Pursuant to Florida Statutes section 316.2015(2)(b), passengers over the age of eighteen can ride in the bed of a pickup truck. As such, the presence of passengers in the bed of the truck alone would not support a traffic stop. However, section 316.610(1), authorizes law enforcement officers to stop a vehicle when the officer has reasonable cause to believe that a vehicle is unsafe. In this case, Lloyd's truck was missing its tailgate, which provided reasonable cause for an officer to believe that having passengers riding in the bed of the truck was an unsafe condition. Accordingly, a reasonable officer in Moyers's position would have believed that Florida Statutes section 316.610(1) authorized law enforcement to stop the vehicle. The stop of the vehicle, therefore, was not an unlawful seizure under the Fourth Amendment.

Moreover, Lloyd points to no evidence disputing Moyers's contention that he had probable cause to stop the truck based on the BOLO.[5] The undisputed record establishes that the BOLO specifically stated two females who had successfully passed counterfeit bills at a local business left the scene in the bed of a white Toyota Tacoma bearing license plate number 467 NUY that was driven by an older white male. Defs. Exs. A at 2; D; E; F. In his deposition, Lloyd stated he was unaware that the business had made the police report, but did not deny that it did, and further acknowledged that 467 NUY is the tag

---

[5] "Be on the Lookout"

number for his Toyota Tacoma truck. Defs. Ex. B at 59-60. He further testified that he let two females borrow his Tacoma a few days before the traffic stop. Id. at 60. It is undisputed that on the night of the traffic stop, Lloyd, an older white male, was driving a white Toyota Tacoma with the same license plate reported to police earlier, with two females sitting in the bed of the truck. Defs. Exs. A at 1-2; B at 21. On these facts which are not disputed, the Court finds that a reasonable officer in the same situation as Moyers would have had not just a reasonable suspicion, but actual probable cause to believe that occupants of the vehicle had committed an unsolved crime, namely passing counterfeit bills. See United States v. Rodger, 521 Fed. Appx. 824, 829 (11th Cir. 2013) (finding deputy had reasonable suspicion to stop Rodger because he matched the description of the robber given to her by dispatch). Accordingly, Lloyd's Fourth Amendment claim based on the traffic stop fails as there is no genuine issue of fact for trial.

Turning to whether the period awaiting the canine unit was unreasonably prolonged, the Court notes that "[u]nder Terry v. Ohio,[6] an officer's investigation of a traffic stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003) (quoting Terry, 392 U.S. at 20). For this reason, Terry stops must be of a limited duration and "[t]he stop 'may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity.'" Id. (citing United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001)) (emphasis added).

In Moyers's affidavit, he states that he stopped Lloyd's truck at approximately 1:59 a.m. on April 22, 2016, which is supported by the Call for Service Detail Report Lloyd

---

attached to his Response. Defs. Ex. A at 1; Pls. Ex. 5. According to Moyers, while he was conducting the traffic stop, speaking with Lloyd and the passengers, and running their names for any outstanding warrants, another deputy along with a canine officer conducted a free air sniff of the outside of the truck. Defs. Ex. A at 2. The canine gave a positive alert on the rear of the passenger side of the vehicle where the cab met the bed of the vehicle. Id. Lloyd's arrest and booking report, attached to Moyers's affidavit as an exhibit, reflects that Moyers arrested Lloyd on April 22, 2016 at 3:47 a.m. Id. at 4. Moyers avers that the "time that elapsed between my initiating the traffic stop and the canine arriving was no longer than what was reasonably necessary for me to speak to the passengers and run their IDs for outstanding warrants." Id. at 2.

In his deposition, Lloyd gave varying testimony regarding how long he had to wait until the canine unit arrived, stating it was a half hour, an hour, and two to three hours. Defs. Ex. B at 54, 56-57, 107-08. At one point in his deposition, Lloyd testified that he had to wait a prolonged time "[a]fter the search," id. at 54, which suggests that Lloyd's claim concerning his prolonged detention includes the time subsequent to the canine search.

Given Moyers's affirmative testimony, no reasonable jury could conclude that the stop was unconstitutionally prolonged. Lloyd's deposition testimony reflects that he did not know how much time he had to wait before the dog arrived and further conflates the period of time he spent during the entire stop with the period of time between which Moyers waited for the canine unit. This conclusory and speculative testimony constitutes no more than a scintilla of evidence that fails to create a genuine issue of fact as to whether the stop lasted longer than reasonably necessary. Moreover, even assuming Lloyd had to wait as long as one hour, Moyers had articulable suspicion not just that Lloyd

had committed a traffic infraction, but also of other illegal activity because Lloyd's truck and the passengers therein matched the description of suspects in a prior unsolved crime. See Boyce, 351 F.3d at 1106. Thus, the initial justification for the seizure was not limited solely to a traffic violation but included the discovery of potential fugitives; therefore, the seizure was justified, and Lloyd has failed to point to evidence that the length of the seizure to investigate the relation of the truck and its occupants to that other illegal activity was unconstitutionally prolonged. See Illinois v. Caballes, 543 U.S. 405, 407 (2005) ("A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.") (emphasis added). Based upon the record, the Court finds that Lloyd has failed to present evidence on which a jury could find that Moyers violated Lloyd's Fourth Amendment rights by stopping his vehicle and awaiting the arrival of the canine unit.

<u>Search</u>

With respect to Lloyd's challenge to the search, Moyers maintains that the canine's alert on the rear of the passenger side of the truck provided probable cause to search the truck, and, therefore, the search was not unconstitutional. Id. at 12. Moreover, because deputies uncovered narcotics and counterfeit bills, they had probable cause to seize the truck and the property therein. Id. at 13.

Although in his Complaint Lloyd states that the canine did not alert when it sniffed around the exterior of the truck, Lloyd acknowledges law enforcement had the canine search in the bed of the truck and found pills. Complaint at 2. Likewise, Moyers's affidavit reflects that the canine unit alerted the deputies to the existence of narcotics. Defs. Ex. A at 2. While Lloyd contends that the dog did not smell anything, he fails to dispute Moyers's

testimony that the dog gave an alert. See Defs. Ex. B at 53. Notably, a canine unit's alert constitutes probable cause to search the vehicle and the people therein. See United States v. Banks, 3 F.3d 399, 402 (11th Cir. 1993) ("Our circuit has recognized that probable cause arises when a drug-trained canine alerts to drugs."). On this record, Lloyd has failed to point to record evidence creating a genuine issue of fact for trial on his claim that the search and subsequent seizure of narcotics and counterfeiting paraphernalia was unreasonable under the Fourth Amendment. See id.

Arrest

To the extent, Lloyd asserts that Moyers falsely arrested him without probable cause, his claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994).[7]

> Under Heck, if a judgment in favor of a plaintiff on a § 1983 claim "would necessarily imply the invalidity of his conviction or sentence[,] . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487, 114 S.Ct. 2364.

Clement v. McCarley, 708 Fed. Appx. 585, 589 (2017). In Clement, the Eleventh Circuit Court of Appeals affirmed the entry of summary judgment against the plaintiff on a claim of false arrest because "[h]is claim would clearly imply the invalidity of his convictions because it is based on the assertion that there was no probable cause to believe he had

---

[7] Defendants suggest that Lloyd's claim could be construed as one for malicious prosecution. See Motion at 13. However, a claim of malicious prosecution arises when one is arrested without probable cause pursuant to legal process – i.e. a warrant. See Chancy v. Bruno, 679 Fed. Appx. 864, 866-67 (11th Cir. 2017). The federal constitutional claim alleging a "warrantless arrest without probable cause" is a claim of "false arrest." Henley v. Payne, 945 F.3d 1325 n.1 (11th Cir. 2019); see also Stefani v. City of Grovetown, 780 Fed. Appx. 842, 847 n.1 (11th Cir. 2019) ("A seizure without probable cause pursuant to an arrest warrant generally gives rise to a § 1983 claim for malicious prosecution, Whiting v. Traylor, 85 F.3d 581, 585-86 (11th Cir. 1996), while a warrantless arrest without probable cause provides the basis for a § 1983 claim for false arrest, Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004)").

committed the offense for which he was convicted." Id. Here, Lloyd's false arrest claim, like that of Clement, is based upon his contention that there was no probable cause to arrest him because he, Lloyd, did not possess either drugs or counterfeit currency. In other words, to prevail on his false arrest claim, Lloyd would have to prove that he was innocent of the crime of which he was convicted. However, it is undisputed that Lloyd entered a plea of no contest to the charges of possession of a controlled substance, possession of less than 20 grams of cannabis, and possession of controlled substance paraphernalia, all of which arose from Moyers's April 22, 2016 traffic stop. See Defs. Ex. C, Defs. Ex. L. It is further undisputed that Lloyd's convictions remain in place. As such, his false arrest claim which would necessarily imply the invalidity of these convictions is barred by Heck.[8]

### Miscellaneous Claims

Lloyd also claims that Moyers planted evidence, specifically counterfeit currency, in his wallet. In his affidavit, Moyers avers that he located the counterfeit currency in Lloyd's wallet when he searched Lloyd. Defs. Ex. A. at 2. Although Lloyd continues to insist, and may well believe that Moyers planted the counterfeit bills, in his deposition Lloyd admitted that there was no evidence to support his belief and that he was not close enough to actually see Deputy Moyers place counterfeit bills in his wallet. Defs. Ex. B at

---

[8] The fact that the counterfeiting charges stemming from the April 22, 2016 traffic stop were dismissed does not alter this conclusion. The undisputed record establishes that narcotics were found in Lloyd's truck giving rise to probable cause to arrest him on the narcotics charges of which he was ultimately convicted. "Probable cause as to any one offense is sufficient to defeat § 1983 claims for other Fourth Amendment violations, including false arrest and unlawful searches." Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019); Bailey v. Board of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.").

55-56. Thus, any claim based on the alleged planting of evidence fails as Lloyd points to no evidence that conflicts with Moyers's sworn statement. Lloyd, as the party opposing summary judgment, is not entitled to rest upon mere allegations contained in the Complaint. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995); Walker v. Darby, 911 F.2d 1573, 1577-78 (11th Cir. 1990). Instead, he is required to go beyond the Complaint and, through affidavit, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that a genuine issue remains for trial. See Jeffery, 64 F.3d at 593-94. Although advised of his obligations in responding to a motion for summary judgment, Lloyd has failed to do so with regard to the claims that Moyer planted the counterfeit currency. As such, he has failed to demonstrate a genuine issue of material fact for trial.

Next, Lloyd attempts to assert a claim based on Moyers's alleged filing of a false traffic report. However, it is undisputed that Moyers never wrote a traffic report. Defs. Ex. A at 3; B at 63. Accordingly, the record refutes Lloyd's claim concerning a false traffic report. Indeed, this claim is not only conclusory and speculative, but affirmatively refuted by the record. See Howard v. Memnon, 572 Fed. Appx. 692, 694-95 (11th Cir. 2014).

Based on the above analysis, the Court finds that Lloyd has failed to raise a genuine issue of fact for trial with respect to his claim that Moyers violated the Fourth Amendment in stopping him, conducting the search, seizing either him or his property, or writing a false traffic report. Further, to the extent he claims Moyers falsely arrested him, Lloyd's claim is barred by Heck. As such, the Motion is due to be granted as to Lloyd's claims against Moyers, and summary judgment entered in favor of Moyers.

## B. Defendant Arline

Defendant Arline seeks entry of summary judgment in his favor arguing that his investigation was not deficient and did not cause a violation of Lloyd's constitutional rights and the affidavit for the search warrant did not contain information that Arline knew to be false. Motion at 2. "A search warrant is void if it contains a deliberately false statement or one that was made in reckless disregard of the truth and that false statement forms the basis of the search." Gonzalez v. Butts Cty., Ga., 522 Fed. Appx. 742, 747 (11th Cir. 2013) (citing Madiwale v. Savaiko, 117 F.3d 1321, 1326 (11th Cir. 1997)). In the related context of claims based on false statements in an arrest warrant, the Eleventh Circuit has explained:

> [a] warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit. A party need not show by direct evidence that the affiant makes an omission recklessly. Rather, it is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself. Omissions that are not reckless, but are instead negligent, or insignificant and immaterial, will not invalidate a warrant. Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause.

Madiwale, 117 F.3d at 1326–27 (11th Cir. 1997) (internal citations and quotations omitted); see also Smith v. Sheriff, Clay County, Fla., 506 Fed. Appx. 894, 898 (11th Cir. 2013); Daniels v. Bango, 487 Fed. Appx. 532, 537 (11th Cir. 2012). Likewise, the Supreme Court has stated that

> [t]he requirement that a warrant not issue but upon probable cause, supported by Oath or affirmation, would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile.

Franks v. Delaware, 438 U.S. 154, 168 (1978). Accordingly, "[u]nder Franks, a police officer violates the Constitution if, in order to obtain a warrant, [he] perjures [himself] or testifies in reckless disregard of the truth." Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994).

Lloyd alleges that Arline filed a false affidavit in support of his request for a warrant to search Lloyd's home. He claims that the affidavit included false statements from three witnesses. The affidavit reflects that on March 9, 2016, Arline spoke with Tina Hunt who stated she helped Lloyd attach a printer to a computer and Lloyd used the printer to reprint United States currency. Defs. Ex. G at 5. On April 6, 2016, Detective Livingston, not Arline, interviewed Skye-Lore King, who stated she observed Lloyd printing counterfeit bills inside his house. Id. On April 20, 2016, Arline interviewed Terra Wright who told him that she observed three printers and a large bag of counterfeit bills located under the trailer. Wright further stated that she was aware that Lloyd was washing money and reprinting bills and that Lloyd buried a suitcase full of counterfeit bills in the yard of his house. Id. Lloyd maintains that all three witnesses were not credible because they gave false statements to get out of pending drug charges, and because none of the items the witnesses mentioned were found in his home.

Although Lloyd contends that all three witnesses lied and thus the statements contained in the search warrant affidavit were false, he provides no evidence to support that contention. In his deposition, Lloyd testified that he did not even know two of the women. More importantly, he does not dispute that the women actually made the statements reported in the affidavit. While Lloyd believes the women made a deal to tell lies, he admits he has no evidence to support that claim. Id. at 71, 76-81. Thus, Lloyd

presents no evidence calling into question Arline's sworn testimony that the three witnesses made the statements reported in the search warrant affidavit. <u>See</u> Defs. Ex. G at 2. Indeed, in his deposition, Lloyd appears to concede that the witnesses did make the statements. Defs. Ex. B at 49-50, 68-69, 72-73, 75-76. Importantly, even if the witnesses' statements were false, Lloyd has failed to point to any evidence supporting even an inference that Arline knew or should have known the statements were false. Lloyd's conclusory allegation that Arline knew is not supported by evidence and is based entirely on speculation. As such, this claim does not withstand summary judgment in Arline's favor. <u>See</u> <u>Howard</u>, 572 Fed. Appx. at 694-95.

To the extent Lloyd contends that the failure to recover certain items in the search is evidence that the witnesses lied, his argument fails. A review of the inventory and receipt from the search warrant reflects that law enforcement officers recovered a number of items associated with counterfeiting bills; including a typewriter, printer, and beaker with chemical residue; and also recovered halves of paper with a partial image of a fifty-dollar bill and a twenty-dollar bill. <u>See</u> Defs. Ex. G at 7. Thus, contrary to Lloyd's contention, officers did recover counterfeiting contraband consistent with the witnesses' statements that they observed Lloyd counterfeiting bills. The fact that officers did not also recover a bag of counterfeit bills is of no moment.

According to Lloyd, Arline also falsely stated that Lloyd lived on the premises and that Lloyd had a previous counterfeiting conviction. However, in Lloyd's deposition, he admitted that he lived at the residence and also testified that he had a conviction in 2012 for counterfeiting, making instruments for forging bills, and bringing into the state forged bank bills. Defs. Ex. B at 85-87. Moreover, given his criminal history, Lloyd presents no

evidence that Arline made a false statement when he wrote in the affidavit that Lloyd's criminal history included "a prison sentence resulting from a conviction for producing counterfeit bills." Defs. Ex. G at 5; Defs. Ex. N.

Next, Lloyd complains that Arline failed to properly investigate if criminal activity was going on in the house prior to requesting a warrant and determining who was living at the home. However, he fails to identify any action Arline should have taken or any avenue of investigation that would have dissipated the existence of probable cause.[9] This speculative claim, lacking in any elaboration or factual support, is entirely insufficient to withstand summary judgment on the record before this Court. Lloyd has failed to point to any evidence supporting even an inference that Arline knowingly made false statements in his affidavit in support of a search warrant. Nor does he present any evidence that Arline omitted evidence pertinent to determining whether probable cause existed to search Lloyd's premises. As such, his claim that Arline illegally obtained the search warrant fails.

Lloyd also appears to contend that Arline falsely arrested him. But, this claim is barred by <u>Heck</u>. It is undisputed that Lloyd pled no contest and was convicted of the charge on which Arline arrested him – "making or possessing instruments for forging bill." Defs. Ex. M at 1. His claim that the arrest was improper because Arline had no probable cause would necessarily imply the invalidity of that conviction. As such, the claim is

---

[9] To the extent Lloyd complains that the search warrant and affidavit did not include any specifications as to what property or items were to be searched, the document refutes this allegation as it describes in detail the premises to be searched and that Arline believed the premises was being used for the purpose of forging bills. Defs. Ex. G at 4-7. Indeed, it is evident from the face of the affidavit that the entire house was to be searched for counterfeit bills and instruments for forging bills, and the search warrant signed by the judge authorized such a search.

barred. Accordingly, the Motion is due to be granted to the extent that summary judgment will be entered in favor of Arline.

## C. Defendant Leeper

Lloyd sues Leeper in his individual capacity. <u>See</u> Complaint at 1. Leeper avers that this claim fails because he was not personally involved in the incidents involving Lloyd, a fact Lloyd admitted in his deposition. Motion at 2, 17-18. To the extent Lloyd sues Leeper in his official capacity as Sheriff of Nassau County, Leeper contends that Lloyd has not suffered a constitutional injury that was a result of a custom, policy, or practice that Lloyd created nor was Leeper on notice that additional training was required. <u>Id.</u> at 2-3, 18. Regarding Lloyd's failure to properly train claim, Leeper asserts that it should be so obvious to all Deputies that they "should not plant eviden[ce] or lie on search warrant affidavits that any failure on the part of Sheriff Leeper to specifically train his Deputies on those matter[s] could not be likely to produce a wrong decision." <u>Id.</u> at 19. Additionally, he contends Lloyd has not provided evidence that Leeper had notice of a need to train his Deputies regarding unlawful traffic stops, illegal searches, or fraudulent search warrant affidavits. <u>Id.</u>

With regard to Lloyd's individual liability claim against Leeper, the Eleventh Circuit has held that "[i]t is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks omitted). To establish individual liability on the part of a sheriff for his or her supervisory conduct, a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between

the supervisor's actions and the alleged constitutional violation." <u>Keith v. DeKalb Cty.,</u>

<u>Georgia</u>, 749 F.3d 1034, 1047-48 (11th Cir. 2014). According to the Eleventh Circuit,

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

<u>Cottone</u>, 326 F.3d at 1360. However, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir.1999) (internal quotation mark omitted).

It is undisputed that Leeper was not present during the execution of the search warrant or during the traffic stop. Indeed, Lloyd admits that he has "no idea" what Leeper did. Defs. Ex. B at 61-62. Accordingly, Lloyd has failed to present any evidence suggesting that Leeper directly participated in the alleged unconstitutional conduct. As such, in order for Lloyd to pursue his individual liability claim against Leeper, Lloyd must point to evidence that would allow a jury to find that a causal connection exists between Leeper's actions and the alleged constitutional violation. However, as the Court has already concluded Moyers and Arline's conduct did not violate Lloyd's constitutional rights; therefore, Lloyd cannot establish any causal connection to constitutional violations.

Nevertheless, even if Lloyd had established Moyers and/or Arline violated his constitutional rights, Lloyd has brought forth no evidence raising a genuine issue of fact on the issue of Leeper's connection to such actions. Although Lloyd alleges widespread

abuse in his Complaint, he points to no evidence supporting that allegation. Indeed, the only specific example of alleged corruption provided by Lloyd relates to an officer involved shooting, which is not relevant to Lloyd's Fourth Amendment claims here. At summary judgment, a moving party discharges its burden by "showing" the absence of evidence necessary to support the non-moving party's claim. Jeffery, 64 F.3d at 593 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Here, Leeper has shown the absence in the record of any evidence of a history of widespread abuse or any custom or policy by Leeper related to the alleged constitutional violations. Once a moving party has discharged its burden, the non-moving party cannot rest on its pleadings, but rather must come forward with evidence showing that there is a genuine issue for trial. Id. at 593-94 (citing Celotex, 477 U.S. at 324). This Lloyd has not done. Upon review of the record, the Court concludes that there are no genuine issues of material fact with respect to Lloyd's claim against Leeper in his individual capacity.

To the extent Lloyd intended to assert a claim against Leeper in his official capacity, any such claim would fail. Where an officer is sued under § 1983 in his official capacity, the suit is actually a proceeding against the entity the officer represents. See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005); see also Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 361, 116 L. Ed.2d 301 (1991) ("[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed.2d 114 (1985))). Accordingly, Lloyd's claim against Leeper in his official capacity as Sheriff of Nassau County is actually a claim against Nassau County. Notably, the Court previously dismissed Nassau County as a

Defendant in this case.  <u>See</u> Order (Doc. 44).  Nevertheless, as Leeper addressed the official capacity claim, in an abundance of caution, the Court will do so as well.  In doing so, the Court considers Leeper's official capacity liability in the context of those cases discussing county and municipal liability under § 1983.

Preliminarily, the Court notes that to the extent that Lloyd seeks to hold Nassau County through Leeper vicariously liable for the actions or omissions of the employees responsible for Lloyd's allegedly false arrest, the Motion is due to be granted.  The United States Supreme Court has soundly rejected the theory of <u>respondeat superior</u> as a basis for liability in § 1983 actions.  <u>See</u> <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978).  Instead, a county or municipality may be liable in a § 1983 action "only where the municipality <u>itself</u> causes the constitutional violation at issue."  <u>Cook ex. rel. Estate of Tessier</u>, 402 F.3d at 1115 (citations omitted).  Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation.  <u>See</u> <u>Monell</u>, 436 U.S. at 693-94, 98 S. Ct. at 2038.  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted).  The policy requirement is designed to "'distinguish acts of the <u>municipality</u> from acts of <u>employees</u> of the municipality, and thereby make clear that municipal liability is limited to action <u>for which the municipality is actually responsible</u>.'"  <u>Grech v. Clayton Cnty., Ga.</u>, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted).  Indeed, municipal liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'

by city policymakers." <u>City of Canton v. Harris</u>, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed.2d 412 (1989) (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 1300-01, 89 L. Ed.2d 452 (1986)).  A municipality will rarely have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation.  <u>See</u> <u>Grech</u>, 335 F.3d at 1330; <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004).  The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice."  <u>Sewell</u>, 117 F.3d at 489.

In some circumstances, "the failure to provide proper training may fairly be said to represent a policy for which the city may be held liable if it actually causes injury."  <u>City of Canton</u>, 489 U.S. at 390, 109 S. Ct. at 1205.  Failure to train can lead to municipal liability "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983."  <u>Id.</u> at 388-89, 109 S. Ct. at 1200 (alteration added).  Thus, in order to assert such a claim, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."  <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998).  The Eleventh Circuit has repeatedly held that "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise."  <u>Id.</u> at 1351.  Indeed, "the need for such training must be plainly obvious to [County] decisionmakers," such as where there is "evidence of a history of widespread

prior abuse." <u>Wright v. Sheppard</u>, 919 F.2d 665, 674 (11th Cir. 1990) (alteration added); <u>see also</u> <u>Rocker v. City of Ocala, Fla.</u>, 355 Fed. Appx. 312, 314 (11th Cir. 2009) (per curiam).[10]

Here, Lloyd fails to point to any evidence demonstrating the existence of any particular custom or policy in Nassau County, much less one that caused the actions about which he complains. Indeed, he does not identify even a single instance of a similar prior constitutional violation by a Nassau County officer. Lloyd was required to bring forth evidence suggesting the existence of an official policy, or alternatively, a custom or widespread practice of Nassau County that was the moving force behind the constitutional violation at issue. Although advised of his obligations in responding to a motion for summary judgment, <u>see</u> Summary Judgment Notice (Doc. 80), Lloyd has failed to do so with regard to his § 1983 claim against Leeper in his official capacity. As such, Lloyd has failed to demonstrate a genuine issue of material fact with respect to whether any such custom or policy existed and thus, Defendant Leeper, in his official capacity as Sheriff of Nassau County, cannot be held liable for the alleged constitutional violations. Accordingly, the Motion is due to be granted as to Defendant Leeper.

---

[10] The Court notes that the Supreme Court, in dictum, has left open the possibility that "a need to train could be 'so obvious,'" that a city could be held liable even without a pattern of prior constitutional violations. <u>See</u> <u>Gold</u>, 151 F.3d at 1352 (citing <u>City of Canton</u>, 489 U.S. at 390, 109 S. Ct. at 1205). The Supreme Court offered the example of the need to train officers in the use of deadly force where the officers are provided firearms. <u>City of Canton</u>, 489 U.S. at 390 n.10, 109 S. Ct. at 1205 n.10. Because an "obvious need" claim "must be based on a 'particular glaring omission in a training regimen' and not merely on 'possible imperfections' in a training program," the Court finds that the record here does not contain evidence to sustain a failure to train claim based on this theory. <u>See</u> <u>West v. Tillman</u>, 496 F.3d 1321, 1331 n.16 (11th Cir. 2007) (quoting <u>Gold</u>, 151 F.3d at 1352).

Last, Lloyd's claim that Leeper falsely imprisoned him is also without merit. A §
1983 false imprisonment claim requires a plaintiff to demonstrate that he or she has been
detained after it was or should have been known that the plaintiff was entitled to be
released. See Cannon v. Macon County, 1 F.3d 1558, 1562-63 (11th Cir. 1993). Lloyd
cannot establish a false imprisonment claim because the undisputed evidence
establishes that Lloyd was properly detained while he awaited the cumulation of his
criminal proceeding. In light of the above, the Court finds that Leeper is entitled to
summary judgment in his favor.[11]

In consideration of the foregoing, it is now

**ORDERED**:

1.     Defendants' Motion for Summary Judgment (Doc. 79) is **GRANTED**.

2.     This case is hereby **DISMISSED**.

3.     The Clerk of Court shall enter judgment in favor of Defendants Moyers,
       Arline, and Leeper; dismiss this case; terminate any pending motions; and
       close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of March, 2020.

MARCIA MORALES HOWARD
United States District Judge

---

[11] In light of the Court's ruling above, it is unnecessary to address Defendants'
remaining arguments that they are entitled to qualified immunity. Notably, however, were
the Court to address qualified immunity, the Court's finding that no Defendant violated
Lloyd's constitutional rights would warrant entry of summary judgment in Defendants'
favor. See Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009) (recognizing that if a
plaintiff fails to show either a constitutional violation or that the right violated was not
clearly established, the defendant will be entitled to qualified immunity).

Jax-8

C:
Orvel Winston Lloyd
Counsel of Record